UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| **Lavaris Mitchell**, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | Judge |
| v. |  |
| **Great Lakes Cold Storage** <br> c/o Gorbett Enterprise of Solon, Inc. <br> 6531 Cochran Road <br> Solon, Ohio 44139 | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| Defendant. |  |

Plaintiff, Lavaris Mitchell ("Plaintiff"), individually and on behalf of all other persons similarly situated, sues the Defendant, Great Lakes Cold Storage (hereafter referred to as "Great Lakes" or "Defendant") and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* Ohio Minimum Fair Wage Standards Act ("OMWFSA"), O.R.C. 4111.01, *et seq.* and Fed. R. Civ. P. 23 for Defendant's failure to pay Plaintiff and other similarly-situated employees all earned minimum and overtime wages.

2.      Plaintiff, the Collective Members and the Class Members are current and former employees of Defendant.  Plaintiff brings this action on behalf of himself and all similarly-situated current and former non-exempt hourly employees of Defendant.

3.      Under the FLSA and OMWFSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rates of pay for all time they spend working in excess of 40 hours in a given workweek. Defendant failed to pay Plaintiff,

1

the Collective Members and the Class Members one and one-half times their regular rate of pay for all time they spent working in excess of 40 hours in a given workweek. Plaintiff therefore brings this Class Action and Collective action Complaint pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b) for Defendant's violation of federal and Ohio law as detailed further below.

4.      Under the FLSA and OMFWSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their **regular rate of pay** for all time they spend working in excess of 40 hours in a given workweek. For the purposes of computing the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments. *See* 29 C.F.R. 778.208-215. Defendant paid Plaintiff, the Collective Members and the Class Members non-discretionary bonuses, but Defendant did not include these payments as part of Plaintiff's, the Collective Members' and the Class Members' regular rates of pay for the purposes of paying overtime.

5.      Under the FLSA and OMWFSA, "[b]ona fide meal periods are not worktime. . . [t]he employee must be completely relieved from duty for the purposes of eating regular meals. . . [t]he employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." *See* 29. C.F.R. § 785.19. Defendant violated the FLSA and OMWFSA by automatically deducting a thirty-minute meal break from each and every shift Plaintiff, the Collective Members and the Class Members worked in excess of six hours regardless of whether Plaintiff, the Collective Members and the Class Members were able to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

## JURISDICTION AND VENUE

2

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this civil action arises under the laws of the United States.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff and the Collective Members occurred within this District.

8.     At all relevant times, Plaintiff has been a resident of Ohio and performed work for Defendant in Solon, Ohio.

9.     Defendant is headquartered in Cuyahoga County, Ohio.

10.     Defendant regularly conducts business in and has engaged in the wrongful conduct alleged herein – and, thus, is subject to personal jurisdiction in – this judicial district.

11.     Plaintiff, the Collective Members and the Class Members in their work for Defendant were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

12.     This case is a re-filing of Case No. 23-CV-10485 ("Original Complaint"), which was filed in the Eastern District of Michigan on February 27, 2023 and voluntarily dismissed without prejudice on June 20, 2023 and should relate back accordingly.

## PARTIES

13.     At all times material to the matters alleged in this Complaint, Plaintiff was an employee of Defendant.

14.     Plaintiff was employed by Defendant as a lift operator and order selector from approximately August, 2018 through approximately May 14, 2021.

15.     The Collective Members are all current and former non-exempt hourly employees who worked for Defendant in the United States at any point in the three years preceding the filing of the original Complaint.

3

16.     The Class Members are all current and non-exempt hourly employees who worked for Defendant in the state of Ohio at any point in the three years preceding the filing of the Complaint.

17.     The Class and Collective Members are non-exempt from the OMFWSA and FLSA overtime requirements.

18.     At all material times, Defendant was an Ohio corporation duly licensed to transact business in the State of Ohio.

19.     Under the OMFWSA and FLSA, Defendant is an employer.  At all relevant times, Defendant had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendant.  As a person who acted in the interest of Defendant in relation to the company's employees, Defendant is subject to liability under the OMFWSA and FLSA.

20.     At all material times, Plaintiff and the Class and Collective Members were employees of Defendant as defined by the OMFWSA and FLSA, 29 U.S.C. § 203(e)(1).

21.     At all material times, Plaintiff and the Class and Collective Members were a non-exempt employees under 29 U.S.C. § 213(a)(1).

22.     Plaintiff has given his written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b), a true and accurate copy of which was attached to the original Complaint as "**Exhibit A.**"  Plaintiff's written consent to be named party Plaintiff in this action is also attached to this Complaint as **"Exhibit A."**

## FACTUAL ALLEGATIONS

4

23.     Defendant is a cold storage logistics company that focuses on temperature-controlled food transportation.

24.     Plaintiff was employed by Defendant as a non-exempt high-lift operator and order selector from on or about August 2018 to on or about May 14, 2021.

25.     The Collective Members are all current and former non-exempt employees who worked for Defendant at any point in the three years preceding the filing of this Complaint. The Collective Members are non-exempt from the FLSA's minimum wage and overtime requirements.

26.     The Class Members are all current and former non-exempt employees who worked for Defendant in Ohio at any point in the three years preceding the filing of this Complaint. The Class Members are non-exempt from the OMFWSA's overtime requirements.

27.     At all relevant times, Plaintiff was compensated on an hourly basis at a rate of approximately $21.00.

28.     In his work for Defendant, Plaintiff routinely worked in excess of forty hours in a given workweek.

29.     During each and every workweek, Plaintiff, the Class and Collective Members were paid on an hourly basis.

30.     At all relevant times, Plaintiff, the Collective Members and the Class Members were subject to Defendant's Meal Break Policy.

31.     Pursuant to Defendant's Meal Break Policy, Defendant automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff, the Collective Members and the Class Members of six-hours or more.

32.     Defendant made this automatic 30-minute deduction from Plaintiff's, the Collective Members' and the Class Members' pay regardless of whether they were actually permitted to take

a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

33.     The job demands of Plaintiff, the Collective Members and the Class Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

34.     Nevertheless, Defendant automatically deducted thirty minutes from every shift of six hour or more worked by Plaintiff, the Collective Members and the Class Members, thereby denying them lawful minimum and overtime wages.

35.     The novel Coronavirus has infected over 100 million Americans and caused the death of over one million Americans. (*See* https://coronavirus.jhu.edu/us-map, last visited February 22, 2023). Following the outbreak of the Coronavirus, Defendant implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Defendant as a requirement to work each shift. The examination was required by Defendant and was necessary for each employee to perform his/her work for Defendant. Unfortunately, Defendant refused to pay for this time. Defendant's conduct violates Federal law and Ohio law.

36.     Plaintiff witnessed hundreds of other Defendant workers undergo similar Covid screening and testing off-the-clock.

37.     Defendant required its employees to arrive prior to the start of their scheduled shifts. However, when employees of Defendant arrived, they were not allowed to clock-in for the day until they passed a physical and medical examination to screen for symptoms of COVID-19. Because they clocked in after completing the COVID-19 screenings, no Defendant employee was

6

paid for the time spent in the COVID-19 screening.

38.     Prior to the start of their shifts, Defendant's employees were required to form a line at the entrance to the facility and to stand six feet apart.  Defendant's employees were then called one- by-one to a checkpoint where the COVID-19 screening took place.  Each employee whose shift was set to begin was required to undergo a temperature check and to answer questions about his/her health.

39.     Plaintiff knows and is aware that other of Defendant's facilities have COVID-19 screening procedures because there were multiple notices provided to Defendant's employees indicating that COVID-19 screening and prevention practices were being instituted across Defendant's facilities.

40.     This COVID-19 screening and testing should have been paid by Defendant because it constitutes compensable time worked.  During this time, Plaintiff and Class and Collective Members were subject to Defendant's control.

41.     Plaintiff and Class and Collective Members were required to follow Defendant's instructions while waiting, during the COVID-19 screening, and before clocking-in for the day. Defendant required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by Defendant and its employees were required to comply under threat of discipline, including possible termination.

42.     Additionally, Plaintiff and Class and Collective Members were confined to the premises of Defendant when they waited for the examinations and during the examinations.

43.     Moreover, Defendant compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature taken, and wear masks.

44.     In other words, Defendant directed, commanded, and restrained its employees during the COVID-19 examinations and testing; prevented them from using that time effectively for their own purposes; and they remained subject to Defendant's control during the examinations and before clocking-in.

45.     Plaintiff and the Class and Collective Members were required to clock-in on time after completing the COVID-19 screening.  If they clocked-in late, they would be disciplined. Further, after completing the COVID-19 screening, the Plaintiff and Class Members were confined to the premises of Defendant and were instructed to walk to the time clocks to clock-in.   Again, Defendant directed, commanded, and restrained its employees during and after the COVID-19 examinations; prevented them from using that time effectively for their own purposes; and they remained subject to Defendant's control.

46.     The COVID-19 screenings were integral and indispensible to the principal work performed by the Plaintiff and Class and Collective Members and were necessary to ensure a safe workplace. The COVID-19 examinations were also undertaken on Defendant's premises, were controlled and required by Defendant, and undertaken primarily for the benefit of Defendant.

47.     Indeed, Defendant required Plaintiff and Class and Collective Members to undergo this screening for the purposes of overall safety of the customers of Defendant and to prevent the Plaintiff and Class and Collective Members from inadvertently and unintentionally infecting the customers. Likewise, the screening was necessary to ensure that Plaintiff and Class and Collective Members safely provided services in support of food transportation.

48.     The COVID-19 examinations and testing were necessary to ensure that the virus did not infect the Defendant facilities or customers. The examinations were also necessary to ensure that the virus did not disrupt the work performed by Plaintiff and Class and Collective Members or

8

affect the business operations of Defendant. If Defendant did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Defendant's facilities causing a mass breakout of the virus infecting hundreds of other workers.

49.     The COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by Plaintiff and Class and Collective Members, which was to support safe food transportation. The COVID-19 screenings were necessary for Plaintiff and Class and Collective Members to perform their primary job duty for Defendant. If Defendant cancelled the COVID-19 screening, Defendant's facilities could get contaminated with the virus, the customers could get infected, and other employees of Defendant could get infected. In that event, Defendant's business would be disrupted, and Plaintiff and Class and Collective Members would not be able to do their work. Therefore, the COVID-19 screenings and testing were necessary to ensure that Plaintiff and Class and Collective Members could do their jobs for Defendant.

50.     The COVID-19 screenings and testing were also integral and indispensable to the principal activity and primary job duty performed by Plaintiff and the Class and Collective Members because the COVID-19 screenings were necessary to ensure that Defendant's workers could perform their work safely, to prevent contamination from the virus, and to keep Defendant's customers safe.

51.     Thus, the COVID-19 screenings were necessary for the Plaintiff and Class and Collective Members to do their work for Defendant and without the screenings, their ability to do their jobs would have been compromised. Plaintiff and the Class and Collective Members could not skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired. The screenings prevented the COVID-19 virus from spreading through Defendant's facilities and infecting employees and products, thereby allowing Defendant's

9

employees to continue to work.

52.     Under these facts, the COVID-19 screenings and testing were for the benefit of Defendant and its customers. The COVID-19 screenings and testing allowed Defendant's operations to continue.  Similarly, the COVID-19 screenings and testing benefited Defendant's customers.

53.     The COVID-19 screenings and testing were also primarily for the benefit of Defendant because Defendant's COVID-19 screening and testing policy was intended to keep its facilities and customers as safe as possible given the circumstances of the global pandemic. Defendant's COVID-19 screening policy was also intended to ensure the safety of Defendant's workers and to ensure that Defendant complied with the law.   By making the workplace safe, Defendant increased the efficiency of Defendant's operations.  Moreover, having employees who are healthy and able to perform their work ensures that Defendant can continue to operate and earn profits.

54.     Moreover, the COVID-19 screenings and testing identified above were not incidental activities for the Plaintiff and Class and Collective Members, but instead, this time was integral and indispensable to their principal activity, was controlled by Defendant, was required by Defendant, was conducted on Defendant's premises, and was performed primarily for the benefit of Defendant and its customers. Therefore, the time spent by the Plaintiff and Class and Collective Members completing the COVID-19 screenings and testing is compensable.

55.     Plaintiff used the Workday mobile application as an integral part of his job duties. The Collective and Class Members similarly used the Workday mobile application for various tasks, including to communicate about work matters, outside of their shift hours and off-the-clock.

56.     Plaintiff, the Collective Members and the Class Members must own and use a personal smart phone in order to use the Workday mobile application.

57.     At all relative times, Plaintiff, the Collective Members and the Class Members have been subject to Defendant's policy of requiring Plaintiff, the Collective Members and the Class Members to spend time working prior to clocking in at the beginning of their shifts and after clocking out at the end of their shifts reading or otherwise interacting with the Workday mobile application.

58.     In light of Defendant's conduct, Plaintiff and Class and Collective Members are owed significant unpaid wages and penalties.

59.     Plaintiff and Class and Collective Members are and were non-exempt employees.

60.     Plaintiff and Class and Collective Members are and were paid on an hourly rate basis.

61.     When they work more than forty (40) hours in a workweek, they are entitled to overtime pay.

62.     As a result of Defendant's company-wide policies, Plaintiff and Class and Collective Members were not paid for all time worked each day and are owed significant unpaid wages.

63.     Defendant's method of paying Plaintiff and Class and Collective Members in violation of Ohio law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Defendant knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

64.     At all relevant times, Defendant paid Plaintiff, the Collective Members and the Class Members different categories of non-discretionary bonuses.

65.     However, Defendant does not include these non-discretionary bonus payments in Plaintiff's, the Collective Members' and the Class Members' regular rates of pay for the purpose of computing the overtime rate paid. As a result, Defendant has violated to overtime provisions of the FLSA and OMFWSA.

## COLLECTIVE ACTION ALLEGATIONS

66.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

67.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on his own behalf and as a representative of individuals similarly situated who are current or former non-exempt hourly employees employed by Defendant.

68.     Defendant subjected all of their non-exempt hourly employees, including Plaintiff and the Collective Members, to their policy and practice of failing to pay for all hours worked and improperly calculating overtime rates in violation of 29 U.S.C. §§ 206 and 207.

69.     Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.

70.     The Collective Members perform or have performed the same or similar work as Plaintiff.

71.     Defendant's failure to pay minimum wage and overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiff or the Collective Members.

72.     Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all of the Collective Members.

73.     As such, Plaintiff brings these FLSA claims as a collective action on behalf of the following class:

> **All of Defendant's current and former non-exempt hourly employees who worked for Defendant at any time from three years preceding the filing of the original Complaint to the present.**

74.     Defendant's unlawful conduct, as described herein, is pursuant to Defendant's corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

75.     Defendant is aware or should have been aware that federal law prohibited them from not paying Plaintiff and the Collective Members all minimum wage and overtime as detailed herein.

76.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

77.     This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

78.     Upon information and belief, the individuals similarly situated to Plaintiff includes thousands of non-exempt hourly employees currently and/or formerly employed by Defendant. Plaintiff is unable to state the precise number of similarly-situated employees because that information is solely in Defendant's possession, custody, or control, but it can be readily ascertained from their employment records.

13

79.     Notice can be provided to the Collective Members by First Class Mail to the last address known to Defendant, via email at the last known email address known to Defendant and by text message to the last known telephone number known to Defendant.

## OHIO RULE 23 CLASS DEFINITIONS AND ALLEGATIONS

80.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

81.      Plaintiff brings his Rule 23 overtime class claims on an opt-out basis for claims arising before July 6, 2022 and on an opt-in basis pursuant to SB 47's amendments to R.C. 4111.03 and 4111.10 for claims arising on or after July 6, 2022.

82.     Plaintiff brings Claims for Relief for violation of Ohio wage and hour laws as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiff brings these claims on behalf of himself and all members of the following class comprised of:

> **Rule 23 Class**
>
> **The Class Members are all of Defendant's current and former non-exempt hourly employees who worked for Defendant, within Ohio, at any time from three years preceding the filing of the original Complaint to the present.**
>
> **Numerosity (Rule 23(a)(1)).**

83.     The Class Members are so numerous that joinder of all members is impracticable. Plaintiff on information and belief alleges, that Defendant employed greater than one hundred people who satisfy the definition of the Class Members.

> **a.   Existence of Common Questions of Law and Fact (Rule 23(a)(2)).**

84.     Common questions of law and fact exist as to the Plaintiff and the Class Members including, but not limited to, the following:

14

a. Whether Defendant unlawfully failed to pay the Class Members all minimum and overtime wages, in violation of the Ohio Minimum Fair Wage Standards Act ("OMFWSA");

b. Whether Defendant unlawfully failed to keep and maintain accurate and true records of the hours worked by the Class Members as required by applicable law; and

c. The damages sustained and the proper measure of restitution recoverable by members of the Class Members.

**b. Typicality (Rule 23(a)(3)).**

85. Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like the Class Members, was subjected to Defendant's illegal scheme to maximize profits by depriving their employees of minimum wage and overtime compensation.

**c. Adequacy (Rule 23(a)(4)).**

86. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

**d. Injunctive and Declaratory Relief (Rule 23(b)(2)).**

87. Class certification of the Rule 23 claims is appropriate pursuant to Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

**e. Predominance and Superiority of Class Action (Rule 23(b)(3)).**

88. Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over any questions

affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's common and uniform policies and practices illegally deprived Plaintiff and all similarly situated employees of wages; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

89.      Plaintiff intends to send notice to all Class Members to the extent required by Rule 23.

**COUNT ONE: FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY FOR ALL HOURS WORKED**
**(on behalf of Plaintiff and the Collective Members)**

90.      Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

91.      Defendant has a consistent enterprise-wide policy of requiring Plaintiff and the Collective Members to perform work while off the clock and failing and/or refusing to compensate Plaintiff the Collective Members at one and one-half times their regular hourly rate for all the time they worked in excess of forty (40) hours.

92.      At all relevant times, Plaintiff and the Collective Members were subject to Defendant's Meal Break Policy.

93.      Pursuant to Defendant's Meal Policy, Defendant automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff and the Collective Members of six-hours or more.

94.      Defendant made this automatic 30-minute deduction from Plaintiff's and the Collective Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

95.      The job demands of Plaintiff and the Collective Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them from being completely relieved from duty for thirty-minutes.

96.      Nevertheless, Defendant automatically deducted thirty minutes from every shift of six hours or more worked by Plaintiff and the Collective Members thereby denying them lawful minimum and overtime wages.

97.      Following the outbreak of the Coronavirus, Defendant implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Defendant as a requirement to work each shift. The examination was required by Defendant and was necessary for each employee to perform his/her work for Defendant. Unfortunately, Defendant refused to pay for this time. Defendant's conduct violates Federal law and Ohio law.

98.       Defendant required its employees to arrive prior to the start of their scheduled shifts. However, when employees of Defendant arrived, they were not allowed to clock-in for the day until they passed a physical and medical examination to screen for symptoms of COVID-19.

Because they clocked in after completing the COVID-19 screenings, no employee was paid for the time spent in the COVID-19 screening.

99.      Prior to the start of their shifts, Defendant's employees were required to form a line at the entrance to the facility and to stand six feet apart.  Defendant's employees were then called one- by-one to a checkpoint where the COVID-19 screening took place.  Each employee whose shift was set to begin was required to undergo a temperature check and to answer questions about his/her health. If the employee passed the examination, he/she was then given a mask to wear. After putting on the mask, the employee then walked to the next station, which was normally hundreds of feet away, where the employee was allowed to clock-in for the day.

100.    Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

101.    Plaintiff used the Workday mobile application as an integral part of his job duties. The Collective Members similarly used the Workday mobile application for various tasks, including to communicate about work matters, outside of their shift hours and off-the-clock.

102.    Plaintiff and the Collective Members must own and use a personal smart phone in order to use the Workday mobile application.

103.    At all relative times, Plaintiff and the Collective Members and the Class Members have been subject to Defendant's policy of requiring Plaintiff and the Collective Members to spend

18

time working prior to clocking in at the beginning of their shifts and after clocking out at the end of their shifts reading or otherwise interacting with the Workday mobile application.

104.    Defendant knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Collective Members over the course of their employment would violate the FLSA, and Defendant was aware of the FLSA's minimum wage and overtime requirements. As such, Defendant's conduct constitutes a willful violation of the FLSA.

105.    As a result of Defendant's failure or refusal to pay Plaintiff and the Collective Members for all hours worked, and Defendant's failure or refusal to pay Plaintiff and the Collective Members one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek, Defendant violated 29 U.S.C. §§ 206 and 207(a). Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

### COUNT TWO: OHIO MINIMUM FAIR WAGE STANDARDS ACT
### FAILURE TO PAY FOR ALL HOURS WORKED
#### (on behalf of Plaintiff and the Class Members)

106.    Plaintiff and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

107.    Plaintiff brings Count Two on an opt-out basis for claims arising before July 6, 2022 and on an opt-in basis pursuant to SB 47's amendments to R.C. 4111.03 and 4111.10 for claims arising on or after July 6, 2022.

108.    "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio

June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)).

109.    Defendant has a consistent enterprise-wide policy of requiring Plaintiff and the Class Members to perform work while off the clock and failing and/or refusing to compensate Plaintiff the Class Members at one and one-half times their regular hourly rate for all the time they worked in excess of forty (40) hours.

110.    At all relevant times and the Class Members were subject to Defendant's enterprise-wide Meal Break Policy.

111.    Pursuant to Defendant's Meal Break Policy, Defendant automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff and the Class Members of six-hours or more.

112.    Defendant made this automatic 30-minute deduction from Plaintiff's and the Class Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

113.    The job demands of Plaintiff and the Class Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

114.    Nevertheless, Defendant automatically deducted thirty minutes from every shift of six hours or more worked by Plaintiff and the Class Members, thereby denying them lawful minimum and overtime wages.

115.    Following the outbreak of the Coronavirus, Defendant implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical

examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Defendant as a requirement to work each shift. The examination was required by Defendant and was necessary for each employee to perform his/her work for Defendant. Unfortunately, Defendant refused to pay for this time. Defendant's conduct violates Federal law and Ohio law.

116.    Defendant required its employees to arrive prior to the start of their scheduled shifts. However, when employees arrived, they were not allowed to clock-in for the day until they passed a physical and medical examination to screen for symptoms of COVID-19.  Because they clocked in after completing the COVID-19 screenings, no employee was paid for the time spent in the COVID-19 screening.

117.    Prior to the start of their shifts, Defendant's employees were required to form a line at the entrance to the facility and to stand six feet apart.  Defendant's employees were then called one- by-one to a checkpoint where the COVID-19 screening took place.  Each employee whose shift was set to begin was required to undergo a temperature check and to answer questions about his/her health. If the employee passed the examination, he/she was then given a mask to wear. After putting on the mask, the employee then walked to the next station, which was normally hundreds of feet away, where the employee was allowed to clock-in for the day.

118.    Plaintiff used the Workday mobile application as an integral part of his job duties. The Class Members similarly used the Workday mobile application for various tasks, including to communicate about work matters, outside of their shift hours and off-the-clock.

119.    Plaintiff and the Class Members must own and use a personal smart phone in order to use the Workday mobile application.

120.    At all relative times, Plaintiff and the Class Members have been subject to

Defendant's policy of requiring Plaintiff and the Class Members to spend time working prior to clocking in at the beginning of their shifts and after clocking out at the end of their shifts reading or otherwise interacting with the Workday mobile application.

121.    Although at this stage, Plaintiff and the Class Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Class Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

122.    As a result of Defendant's failure or refusal to pay Plaintiff and the Class Members all minimum wages and overtime due under Ohio law, Plaintiff and the Class Members are entitled to compensation for all such unpaid wages, to be proven at trial, plus treble damages and interest, reasonable attorney's fees, and costs.

**COUNT THREE: FAIR LABOR STANDARDS ACT**
**FAILURE TO INCLUDE BONUS AND SHIFT DIFFERENTIAL PAY IN**
**OVERTIME RATE**
**(on behalf of Plaintiff and the Collective Members)**

123.    Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

124.    Under the FLSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their **regular rate of pay** for all time they spend working in excess of 40 hours in a given workweek. For the purposes of computing the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments. *See* 29 C.F.R. 778.208-215.

125.    At all relevant times, Defendant paid Plaintiff and the Collective Members different categories of non-discretionary bonuses.

126.    At all relevant times, Defendant paid Plaintiff and the Collective Members different categories of shift-differential premiums.

127.    However, Defendant does not include these non-discretionary bonus payments or shift differential premiums in Plaintiff's and the Collective Members' regular rates of pay for the purpose of computing the overtime rate paid. As a result, Defendant has violated to overtime provisions of the FLSA.

128.    Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

129.    Defendant knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Collective Members over the course of their employment would violate the FLSA, and Defendant was aware of the FLSA's minimum wage and overtime requirements. As such, Defendant's conduct constitutes a willful violation of the FLSA.

130.    As a result of Defendant's failure or refusal to pay Plaintiff and the Collective Members one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek, Defendant violated 29 U.S.C. § 207(a). Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular

rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**COUNT FOUR: OHIO MINIMUM FAIR WAGE STANDARDS ACT FAILURE TO INCLUDE BONUS AND SHIFT DIFFERENTIAL PAY IN OVERTIME**
**(on behalf of Plaintiff and the Class Members)**

131.    Plaintiff and the Class Members reallege and incorporates by reference all allegations in all preceding paragraphs.

132.    Plaintiff brings Count Four on an opt-out basis for claims arising before July 6, 2022 and on an opt-in basis pursuant to SB 47's amendments to R.C. 4111.03 and 4111.10 for claims arising on or after July 6, 2022.

133.    "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)). Under the OMFWSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their **regular rate of pay** for all time they spend working in excess of 40 hours in a given workweek. For the purposes of computing the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments.

134.    At all relevant times, Defendant paid Plaintiff and the Class Members different categories of non-discretionary bonuses.

135.    At all relevant times, Defendant paid Plaintiff and the Class Members different categories of shift-differential premiums.

136.    However, Defendant does not include these non-discretionary bonus payments or shift-differential premiums in Plaintiff's and the Class Members' regular rates of pay for the

24

purpose of computing the overtime rate paid. As a result, Defendant has violated to overtime provisions of the OMFWSA.

137.     Although at this stage, Plaintiff and the Class Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Class Members believe that such information will become available during the course of discovery.  Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

138.     As a result of Defendant's failure or refusal to pay Plaintiff and the Class Members all overtime due under Ohio law, Plaintiff and the Class Members are entitled to compensation for all such unpaid wages, to be proven at trial, plus treble damages and interest, reasonable attorney's fees, and costs.

## COUNT FIVE: FAIR LABOR STANDARDS ACT
## IMPROPER KICKBACKS

139.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

140.     The wage requirements of the FLSA "will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." *See* 29 C.F.R. 778.315. "For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Id.*

141.     Defendant requires Plaintiff and the Collective Members to pay for tools of the trade, including but not limited to ski masks, boots, glove liners, and gloves.

142.     Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

143.     Defendant knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Collective Members over the course of their employment would violate the FLSA, and Defendant was aware of the FLSA's minimum wage and overtime requirements. As such, Defendant's conduct constitutes a willful violation of the FLSA.

144.     As a result of Defendant's failure to reimburse Plaintiff and the Collective Members for their phones, cellular service, cold gear and other job-related expenses, Defendant violated the minimum wage and overtime provisions of the FLSA. Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## COUNT SIX: OHIO MINIMUM FAIR WAGE STANDARDS ACT
## IMPROPER KICKBACKS

145.     Plaintiff and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

146.    "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)). The wage requirements of the OMFWSA will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.

147.    Defendant requires Plaintiff and the Class Members to pay for tools of the trade, including but not limited to ski masks, boots, glove liners, and gloves.

148.    Although at this stage, Plaintiff and the Class Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Class Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

149.    Defendant knew that – or acted with reckless disregard as to whether – their deductions of tools of the trade from Plaintiff and Class Members' wages would violate Ohio law, and Defendant was aware of the Ohio's minimum wage and overtime requirements during Plaintiff's and the Class Members' employment.  As such, Defendant's conduct constitutes a willful violation of the OMFWSA.

150.    As a result of Defendant's failure to reimburse Plaintiff and the Class Members for their phones, cellular service, cold gear and other job-related expenses, Plaintiff and the Class Members are entitled to compensation for all such unpaid wages, to be proven at trial, plus treble damages and interest, reasonable attorney's fees, and costs.

27

WHEREFORE, Plaintiff, Lavaris Mitchell, individually, and on behalf of all other similarly situated persons, requests that this Court grant the following relief in Plaintiff's, the Collective Members' and the Class Members' favor, and against Great Lakes Cold Storage:

    A.    For the Court to declare and find Great Lakes Cold Storage committed one or more of the following acts:

        i.    violated the minimum wage and overtime provisions of the FLSA;

        ii.    willfully violated the minimum wage and overtime provisions of the FLSA;

        iii.    violated the minimum wage and overtime provisions of the OMFWSA; and

        iv.    willfully violated the minimum wage and overtime provisions of the OMFWSA.

    B.    For the Court to award damages in the amounts of all unpaid overtime wages due and owing to Plaintiff, the Collective Members and the Class Members;

    C.    For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial;

    D.    For the Court to award prejudgment and post-judgment interest on any damages awarded;

    E.    For the Court to award all treble damages, interest attorney fees and costs owed to Plaintiff and the Class Members under the OMFWSA;

    F.    For the Court to award Plaintiff's and the Collective Members' reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth in this Complaint;

G.    For the Court to provide a reasonable incentive award for Plaintiff to compensate her for the time he spent attempting to recover wages for the Collective Members and for the risks he took in doing so; and

H.    Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, the Collective Members and the Class Members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

DATED:  July 5, 2023

Respectfully submitted,

s/ *Michael L. Fradin*
Michael L. Fradin, Esq. (OH#0091739)
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

By: /s/ *James L. Simon*
James L. Simon (OH#0089483)
SIMON LAW CO.
5000 Rockside Road
Liberty Plaza – Suite 520
Independence, OH 44131
Telephone: (216) 816-8696
Email: james@simonsayspay.com

29